1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| ALVARADO ORTHOPEDIC RESEARCH, L.P., a California limited partnership; and KENNETH H. HOLKO, an individual,<br><br>             Plaintiffs,<br><br>vs.<br><br>LINVATEC CORPORATION, a Florida corporation; and DOES 1 through 50, inclusive,<br><br>             Defendants. | **CASE NO: 11-CV-246-IEG (RBB)**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 8] |

19
20
21
22

Presently before the Court is Defendant Linvatec's motion to dismiss Plaintiffs' claims for fraud, breach of fiduciary duty, and punitive damages.  This motion is suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the Court **GRANTS** Defendant's motion.

23

## BACKGROUND

24
25
26
27

Unless otherwise noted, the following facts are drawn from Plaintiffs' complaint.

Plaintiff Alvarado is a limited partnership under the laws of California with its principal place of business in San Diego, California.  Alvarado's principal is Dr. Thomas Peterson.  Plaintiff Kenneth

28

1    Holko is a metallurgical engineer residing in San Diego and a citizen of California.  Defendant

2    Linvatec is a corporation under the laws of Florida with its principal place of business in Florida.

3        Alvarado is in the business of creating surgical blades used in orthopedic surgery.  Holko and

4    Peterson produced a patented nickel-case coating for surgical saw blades.  Alvarado, through Peterson,

5    invented the design of a patented blade shape, "ribbed" saw blades that come with or without the

6    special coating.  The special coating and the ribs on the blades substantially reduce fine metal debris

7    which accumulates in open wounds during orthopedic surgery.

8        On November 13, 1989, Alvarado entered into a licensing agreement with Zimmer, Inc., which

9    allowed Zimmer to market, sell, and distribute surgical blades that made use of Alvarado's patented

10   blade coating or blade shape.  [Compl., Ex. A.]  In December 1997, Zimmer assigned all of its interests

11   under the license agreement to Defendant Linvatec.  [*Id.*, Ex. C.]

12       The agreement requires Linvatec to pay royalties to Alvarado for each blade sold that includes

13   Plaintiffs' proprietary technology and to provide Alvarado with quarterly statements listing the number

14   of blades sold and the calculated royalties.[1]  The agreement permits Alvarado to request an

15   independent Certified Public Accountant to audit Linvatec's records "as may be necessary to verify the

16   accuracy of the reports made during the previous calendar year."  [*Id.* ¶ 9 & Ex. A.]  Under the

17   agreement, Plaintiff Holko is the exclusive manufacturing supplier of the coated blades.  The

     agreement also provides that it is governed by California law.

18       Sometime in 2008, Plaintiffs contacted Linvatec with concerns that (1) Linvatec was not using

19   the then-current list prices of blades to calculate Alvarado's royalties and (2) Linvatec failed to include

20   in its reports—and thus failed to pay royalties for—some of the blades it sold.  Unsatisfied with

21   Linvatec's assurances that any decrease in sales stemmed from normal fluctuations in the market,

22   Plaintiffs requested that Linvatec disclose the actual list prices for each blade sold under the

23   agreement.  Upon this disclosure, Plaintiffs discovered Linvatec had been calculating royalty payments

24   based on discounted sales price rather than the advertised list price as required under the agreement.

25

26

27       [1] In January 1995, before Zimmer assigned its rights to Linvatec, Alvarado and Zimmer
     modified the calculation of royalty payments.  [Compl., Ex. B.]  The details of those modifications are
28   not relevant to this motion.

From late 2008 through August 2009, Linvatec assured Plaintiffs it would investigate their concerns.  In April 2010, Plaintiffs unsuccessfully sought additional information from Linvatec regarding their concerns.  Plaintiffs claim that they were forced to rely on Linvatec's representations in the quarterly reports because (1) calculating the royalty payments involved a substantial amount of sales data and (2) Plaintiffs did not have direct possession of the underlying data.  Plaintiffs further allege that Linvatec intentionally concealed information and misled them regarding royalty payments.

On February 4, 2011, Plaintiffs initiated this action.  Plaintiffs' complaint alleges four causes of action: (1) breach of contract, (2) breach of fiduciary duty, (3) fraud, and (4) accounting.  All of Plaintiffs' claims arise under California law; however, Plaintiffs allege the Court has diversity jurisdiction over this action.  Plaintiffs allege, and Linvatec has not disputed, that the parties are completely diverse and that the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332.

Linvatec now moves to dismiss Plaintiffs' claims for fraud and breach of fiduciary duty, and their request for punitive damages.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).  Leave to amend should be granted unless the defect is not curable by amendment.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003). The Court must accept all factual allegations pleaded in the complaint as true and construe them and draw all reasonable inferences in favor of the nonmoving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court need not, however, accept "legal conclusions" as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must contain "enough facts to state a claim to relief

that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940.

While the Court generally may not consider any material beyond the pleadings on a Rule 12(b)(6) motion, it "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). Plaintiffs' complaint includes copies of the initial licensing agreement, modifications to that agreement made in 1995, and the 1997 assignment of Zimmer's rights and obligations under the agreement to Linvatec. [Compl., Exs. A, B, C.] Those documents are integral to the complaint, and the parties do not dispute their accuracy. Accordingly, the Court may consider the agreement and its modifications "as 'part of the complaint, and thus may assume that [their] contents are true for the purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder*, 450 F.3d at 448 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

**DISCUSSION**

**I.**   **Fraud**

Under California law, the economic loss doctrine bars tort claims based on the same facts and damages as breach of contract claims. The doctrine "precludes recovery for 'purely economic loss due to disappointed expectations,' unless the plaintiff 'can demonstrate harm above and beyond a broken contractual promise.'" *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). The rule seeks to "prevent the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter*, 34 Cal. 4th at 988 (internal quotation marks omitted). Thus, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law" and "exposes a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 989, 993 (internal quotation marks omitted).

1

Here, Plaintiffs' fraud claims are based upon the same factual allegations—regarding both

2

misconduct and damages—as Plaintiffs' breach of contact claim: Linvatec failed provide complete and

3

accurate quarterly royalty reports as required under the agreement, and, as a result, Linvatec did not

4

pay Plaintiffs the full amount of royalties due under the agreement.  Plaintiffs have not alleged that

5

Linvatec violated any duty independent of its contractual obligation to accurately report the types,

6

numbers, and list prices of blades sold.  Nor do Plaintiffs allege Linvatec's actions exposed them to

7

liability for—or that they suffered—damages independent of their economic loss related to Linvatec's

8

alleged breach.  In short, the allegations underlying Plaintiffs' fraud claim mirror those underlying

9

Plaintiff's breach of contract claim.  Thus, Plaintiffs' fraud claim is barred by the economic loss

10

doctrine.

11

Accordingly, Plaintiffs' fraud claim is **DISMISSED WITHOUT PREJUDICE**.  Because the

12

economic loss doctrine precludes Plaintiffs' fraud claim, the Court need not address Linvatec's other

13

challenges to that claim.

14

## II.   __Breach of Fiduciary Duty__

15

A claim for breach of fiduciary duty requires a showing that (1) a relationship giving rise to a

16

fiduciary duty existed, (2) the defendant breached that fiduciary duty, and (3) the plaintiff suffered

17

damages as a result of that breach.  *See Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 158

18

Cal. App. 4th 226, 244 (2007).  "Without a fiduciary relationship, there can be no breach of fiduciary

19

duty." *Tina v. Countrywide Home Loans, Inc.*, No. 08 CV 1233, 2008 WL 4790906, at *4 (S.D. Cal.

20

Oct. 30, 2008).

21

"'[B]efore a person can be charged with a fiduciary obligation, he must either knowingly

22

undertake to act on behalf and for the benefit of another, or must enter into a relationship which

23

imposes that undertaking as a matter of law.'" *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.

24

4th 375, 386 (2008) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d

25

197, 221 (1983)) (alteration in original).  Linvatec argues that Plaintiffs' claim fails because Linvatec

26

owed no fiduciary duty to Plaintiffs.[2]  It is not entirely clear whether Plaintiffs claim Linvatec

27
28

[2] Linvatec also argues that the economic loss doctrine precludes Plaintiffs' claim for breach of fiduciary duty.  An exception to that rule exists, however, for tort claims stemming from a breach of a fiduciary duty.  *See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163,

knowingly undertook a fiduciary duty or that the parties' relationship imposed fiduciary duties as a matter of law, but Plaintiffs have not alleged facts to support either theory. Thus, Plaintiffs' claim fails because they have not pleaded facts establishing a fiduciary relationship.

Plaintiffs have not alleged facts that tend to show Linvatec "knowingly" undertook fiduciary obligations, as nothing in the contract itself suggests Linvatec intended to subordinate its interests to Plaintiffs'. *See City of Hope*, 43 Cal. 4th at 386. Rather, the agreement's terms indicate that the parties intended to establish a mutually beneficial relationship. For example, Article IV of the agreement states that Alvarado was to receive funding for relevant U.S. patent and trademark applications and similar foreign applications requested by Linvatec, for maintaining such patent and trademarks, and for product development. It also provided that Alvarado would earn royalties from Linvatec's sales. Article III grants Linvatec an exclusive license to "use, market, sell and distribute" Plaintiff's products, as well as the right to grant sub-licenses. Article XVII permits Linvatec to assign its contractual rights to a subsidiary. Article VII allows Linvatec to initiate litigation against any parties infringing upon the relevant patents if Plaintiffs fail to do so. Article XV permits both parties to terminate the agreement in the event that either party fails to satisfy its contractual obligations. These provisions indicate the parties' "common goal was to achieve a mutually beneficial arrangement, not that [Linvatec] had undertaken a fiduciary obligation 'to act on behalf of and for the benefit of another.'" *City of Hope*, 43 Cal. 4th at 386 (quoting *Comm. on Children's Television*, 35 Cal. 3d at 222).

Examples of relationships that impose fiduciary duties as a matter of law include "a joint venture, a partnership, or an agency." *Id.* at 386. As a general rule, "'California courts have not extended the "special relationship" doctrine to include ordinary commercial contractual relationships.'" *Margosian v. Margosian*, No. CV F 11-0137, 2011 WL 703614, at *11 (E.D. Cal. Feb. 18, 2011) (quoting *Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396, 412, (1988)); *see also City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002)

---

1180 (C.D. Cal. 2009) (citing *Robinson Helicopter*, 34 Cal. 4th at 990). Thus, whether Plaintiffs have sufficiently pleaded their claim and whether the claim falls under an exception to the economic loss rule will both depend on whether Plaintiffs have sufficiently pleaded the existence of a fiduciary relationship.

("The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty.").

But even in cases where the contract itself does not establish a fiduciary relationship, extrinsic factors may "elevate a contractual relationship to a fiduciary one."  *Portney v. CIBA Vision Corp.*, No. SACV 07-0854, 2008 WL 5505517, at *4 (C.D. Cal. July 17, 2008) (citing *City of Hope*, 43 Cal. 4th at 388-89); *see also City of Hope*, 43 Cal. 4th at 386-87 (considering extrinsic factors to assess the parties' relationship though the contract in question expressly limited the nature of their relationship). Relevant extrinsic factors include: (1) the relative sophistication and bargaining power of the parties; (2) whether the parties were represented by counsel throughout negotiations; (3) whether one party's reliance on the other is "so substantial as to give rise to equitable concerns"; and (4) whether the contract requires one party to transfer confidential information to the other.  *See City of Hope*, 43 Cal. 4th at 389-91.  These four characteristics, however, "are common in many a contractual arrangement, yet do not necessarily give rise to a fiduciary relationship." *Id.* at 388.  In evaluating these or other extrinsic factors, the Court essentially assesses whether one party was so vulnerable that it could not effectively protect itself, and whether the stronger party took advantage of that vulnerability.  *See Person v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1161 (2005) ("[V]ulnerability 'is the necessary predicate of a confidential relation,' and 'the law treats [it] as absolutely essential.'" (quoting *Richelle L. v, Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 273 (2003))).  "[V]ulnerability 'usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity'" that preexists—as opposed to arising from—the transaction at issue.  *See TMX Funding, Inc. v. Impero Techs., Inc.*, No. 5:10-cv-00202, 2010 WL 4774791, at *6 (N.D. Cal. Nov. 16, 2010) (quoting *Richelle L.*, 106 Cal. App. 4th at 273).

The crux of Plaintiffs' argument is that they were vulnerable under the licensing agreement because it required them to share their proprietary technology with Linvatec and to rely on Linvatec's quarterly reports.  Plaintiffs highlight Linvatec's exclusive access to its own sales data and its superior ability to review, filter, and organize that data.  In their opposition, Plaintiffs also point to the agreement's confidentiality provision and its lack of a provision expressly limiting the parties' relationship as suggesting the agreement creates a fiduciary relationship.

But Linvatec's "contractual obligation to pay royalties, maintain full and accurate records of royalties due, and maintain the confidentiality of the licensed technology . . . are not unusual for an agreement of this kind." *Portney*, 2008 WL 5505517, at *4. "[F]iduciary obligations are not necessarily created when one party entrusts valuable intellectual property for another for commercial development in exchange for the payment of compensation contingent on commercial success." *City of Hope*, 43 Cal. 4th at 391; *see Portney*, 2008 WL 5505517, at *4 ("In a world where the exchange of information and technology is indispensable to national and international commerce, such an exchange will rarely suffice to create a fiduciary relationship."). Moreover, the agreement also permitted Plaintiffs to have an independent CPA audit Linvatec's quarterly reports. This provision suggests both that Plaintiffs had a contractual right to access the data they now accuse Linvatec of concealing, and that Plaintiffs were sophisticated enough to negotiate contractual terms designed to protect their interests. The absence of a contractual term expressly limiting the nature of the parties' relationship does nothing to suggest Plaintiffs were particularly vulnerable.[3]

The terms of the agreement and the circumstances in this case appear rather unremarkable. Plaintiffs have not pleaded any facts suggesting that they were vulnerable to improper exploitation by Linvatec. *See City of Hope*, 43 Cal. 4th at 389 ("With respect to [the plaintiff's] claim that it reposed trust and confidence in [the defendant,] we note that '[e]very contract requires one party to repose an element of trust and confidence in the other to perform.'" (quoting *Wolf v. Superior Court*, 107 cal. App. 4th 25, 31 (2003)). Thus, Plaintiffs have provided no justification for, as a matter of law, "elevat[ing] a contractual relationship to a fiduciary one." *See Portney*, 2008 WL 5505517, at *4.

---

[3] Relying on *City of Hope*, Plaintiffs ask the Court to infer a fiduciary relationship from the absence of a contractual term expressly limiting the nature of the parties' relationship. Nothing in *City of Hope*, however, suggests such a leap is appropriate.

In *City of Hope*, the contract in dispute included a term expressly stating that the parties' relationship was "not a joint venture, partnership, or agency." *City of Hope*, 43 Cal. 4th at 386. The California Supreme Court noted that "[t]hose categories are merely illustrative of fiduciary relationships in which fiduciary duties are imposed by law," and then proceeded to analyze factors extrinsic to the contract and held the plaintiff was not so vulnerable as to "warrant recognition of a fiduciary duty." *See id.* at 386-92. While *City of Hope* supports the proposition that contractual language limiting the relationship between parties will not necessarily preclude a fiduciary relationship, it does not support the notion that the absence of such language indicates the existence of a fiduciary relationship.

8

Because Plaintiffs have not pleaded facts establishing a fiduciary relationship with Linvatec, they have failed to state a claim for breach of fiduciary duty.  Accordingly, this claim is **DISMISSED WITHOUT PREJUDICE**.

### III.    Punitive Damages

"Plaintiffs are not requesting an award of punitive damages for [Linvatec's] breach of its obligation to pay royalties.  Rather, Plaintiffs' Complaint seeks an award of punitive damages for [Linvatec's] independent torts of breach of fiduciary duty and fraud."  [Pl.'s Opp'n, Doc. No. 11, at 14.]  Because Plaintiffs have failed to state claims for fraud or breach of fiduciary duty, there is no basis for Plaintiffs' request for punitive damages.  Accordingly, Plaintiffs' request for punitive damages is **DISMISSED WITHOUT PREJUDICE**.

### CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**.  Plaintiffs' claims for breach of fiduciary duty, fraud, and punitive damages are **DISMISSED WITHOUT PREJUDICE**.


**IT IS SO ORDERED.**


**DATED:** 8/23/11

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

9