# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARADO ORTHOPEDIC RESEARCH, L.P., a California limited partnership; KENNETH H. HOLKO, an individual,<br><br>Plaintiffs-Counterdefendants,<br><br>vs.<br><br>LINVATEC CORPORATION; and DOES 1 through 50, inclusive,<br><br>Defendants-Counterclaimant. | CASE NO. 11cv246 - IEG (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>[Doc. No. 26] |

Presently before the Court is Plaintiffs-Counterdefendants Alvarado Orthopedic Research, L.P. ("Alvarado") and Kenneth H. Holko ("Holko") (collectively "Plaintiffs")'s motion to dismiss Defendant-Counterclaimant Linvatec Corporation ("Linvatec")'s first amended counterclaims. [Doc. No. 26.]  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

## BACKGROUND

Plaintiff-Counterdefendant Alvarado is a limited partnership under the laws of California with its principal place of business in San Diego, California.  [Doc. No. 1, Compl. ¶ 4.] Alvarado's principal is Dr. Thomas Peterson.  [Id. ¶ 14]  Plaintiff-Counterdefendant Holko is a metallurgical engineer residing in San Diego and a citizen of California.  [Id. ¶¶ 5, 14.] Defendant-Counterclaimant Linvatec is a corporation under the laws of Florida with its principal place of business in Florida.  [Id. ¶ 6.]

1  Alvarado is in the business of creating surgical blades used in orthopedic surgery.  Holko
2  and Peterson produced a patented nickel-case coating for surgical saw blades.  [Compl. ¶ 14.]
3  Alvarado, through Peterson, invented the design of a patented blade shape, "ribbed" saw blades
4  that come with or without the special coating.  [Id. at ¶¶ 14-15.]  The special coating and the ribs
5  on the blades substantially reduce fine metal debris which accumulates in open wounds during
6  orthopedic surgery.  [Id. ¶ 14.]

7  On November 13, 1989, Alvarado entered into a licensing agreement with Zimmer, Inc.
8  ("Zimmer"), which allowed Zimmer to market, sell, and distribute surgical blades that made use of
9  Alvarado's patented blade coating or blade shape.  [Compl. ¶ 9, Ex. A.]  In December 1997,
10  Zimmer assigned all of its interests under the license agreement to Linvatec.  [Id. ¶ 12, Ex. C.]

11  Plaintiffs allege that the agreement requires Linvatec to pay royalties to Alvarado for each
12  blade sold that includes Plaintiffs' proprietary technology and to provide Alvarado with quarterly
13  statements listing the number of blades sold and the calculated royalties.  [Compl. ¶¶ 15, 19, Ex. A
14  at 6-7.]  The agreement permits Alvarado to request an independent Certified Public Accountant to
15  audit Linvatec's records "as may be necessary to verify the accuracy of the reports made during
16  the previous calendar year."  [Id. Ex. A at 7.]  Under the agreement, Kenneth Holko Inc. is the
17  exclusive manufacturing supplier of the coated blades.  [Id. Ex. A at 23-24.]  The agreement also
18  provides that it is governed by California law.  [Id. Ex. A at 19.]

19  Sometime in 2008, Plaintiffs contacted Linvatec with concerns that (1) Linvatec was not
20  using the then-current list prices of blades to calculate Alvarado's royalties and (2) Linvatec failed
21  to include in its reports—and thus failed to pay royalties for—some of the blades it sold.  [Compl.
22  ¶¶ 23-24.]  Unsatisfied with Linvatec's assurances that any decrease in sales stemmed from normal
23  fluctuations in the market, Plaintiffs requested that Linvatec disclose the actual list prices for each
24  blade sold under the agreement.  [Id. ¶ 25.]  Upon this disclosure, Plaintiffs allege that they
25  discovered Linvatec had been calculating royalty payments based on discounted sales price rather
26  than the advertised list price as required under the agreement.  [Id.]

27  From late 2008 through August 2009, Linvatec assured Plaintiffs it would investigate their
28  concerns.  [Compl. ¶ 25.]  In April 2010, Plaintiffs unsuccessfully sought additional information

1  from Linvatec regarding their concerns.  [Id. 26.]  Plaintiffs claim that they were forced to rely on
2  Linvatec's representations in the quarterly reports because (1) calculating the royalty payments
3  involved a substantial amount of sales data and (2) Plaintiffs did not have direct possession of the
4  underlying data.  [Id. ¶¶ 19-22.]  Plaintiffs further allege that Linvatec intentionally concealed
5  information and misled them regarding the royalty payments.  [Id. ¶ 30.]

6  On February 4, 2011, Plaintiffs filed a complaint against Linvatec alleging four causes of
7  action for: (1) breach of contract, (2) breach of fiduciary duty, (3) fraud, and (4) accounting.
8  [Compl.]  On August 23, 2011, the Court granted Linvatec's motion to dismiss and dismissed
9  without prejudice Plaintiffs' claims for fraud and breach of fiduciary duty and their request for
10 punitive damages.  [Doc. No. 14.]

11 On September 6, 2011, Linvatec filed an answer to the complaint and counterclaims
12 against Plaintiffs.  [Doc. No. 16.]  On October 17, 2011, Linvatec filed an amended answer and
13 counterclaims against Plaintiffs alleging six causes of action for: (1) declaratory judgment; (2)
14 breach of the covenant of good faith and fair dealing; (3) unjust enrichment; (4) breach of contract;
15 (5) accounting; and (6) negligent misrepresentation.  [Doc. No. 21, Am. Countercl.]  In the
16 counterclaims, Linvatec alleges that following the commencement of this lawsuit by Plaintiffs,
17 Linvatec discovered that two of the four patents licensed in the agreement had expired in 2004.
18 [Id. ¶¶ 21-22, 25-26, 50.]  Linvatec alleges that Plaintiffs never informed them that the patents had
19 expired and Plaintiffs' patent attorney falsely informed Linvatec that the patents would not expire
20 until 2009.  [Id. ¶¶ 47-49.]  Livantec alleges that this caused it to pay Plaintiffs more royalties than
21 were owed under the licensing agreement.  [Id. ¶ 50.]  By the present motion, Plaintiffs seek to
22 dismiss Linvatec's counterclaim for negligent misrepresentation as to both Plaintiffs and
23 Linvatec's remaining counterclaims as to only Holko.[1]  [Doc. No. 26-5, Pl.'s Mot. at 8-10.]
24 ///
25 ///
26

27  [1] In their motion to dismiss, Plaintiffs also sought to dismiss all of Linvatec's counterclaims
because Linvatec's allegations are contradicted by the referenced patents. [Doc. No. 26-5, Pl.'s Mot.
28 at 6-8.] However, in their reply, Plaintiffs state that they are withdrawing this portion of their motion.
[Doc. No. 34, Pl.'s Reply at 2.]

///

# DISCUSSION

## I.  Legal Standards for a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  FED. R. CIV. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (alteration in original).  A court need not accept "legal conclusions" as true.  Iqbal, 129 S. Ct. at 1949.  In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

///

///

**II.     Timeliness of Plaintiffs' Motion**

Linvatec argues that the Court should deny Plaintiffs' motion because it is untimely. [Doc. No. 33, Def.'s Opp'n. at 7.] Linvatec filed its first amended answer and counterclaims on October 17, 2011. [Doc. No. 21.] Federal Rule of Civil Procedure 15(a)(3) provides that any required response to an amended pleading must be made within 14 days after service of the amended pleading. Linvatec argues, therefore, that Plaintiffs were required to respond to its amended counterclaims by October 31, 2011, but Plaintiffs did not file the present motion to dismiss until November 7, 2011. [Def.'s Opp'n. at 7.] However, on November 23, 2011, the Court granted Plaintiffs' motion for extension of time to file an answer to the amended counterclaims, making Plaintiffs' answer due on or before 14 days after the Court rules on Plaintiffs' motion to dismiss. [Doc. No. 29.] See FED R. CIV. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time."). Therefore, Plaintiffs' motion is not untimely because the time has not yet passed for Plaintiffs to file their responsive pleading to the amended counterclaims. See FED R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); Aetna Life Ins. Co. v. Alla Medical Services, Inc., 855 F.2d 1470, 1474 (9th Cir. 1988) ("This circuit allows a motion under Rule 12(b) any time before the responsive pleading is filed."). Accordingly, the Court declines to deny Plaintiffs' motion to dismiss as untimely.

**III     Linvatec's First Five Counterclaims Against Holko**

Plaintiffs argue that Linvatec's counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, accounting, unjust enrichment and declaratory relief should all be dismissed as to Plaintiff Holko because Linvatec does not allege that it ever entered into a contract with Holko. [Pl.'s Mot. at 9-10.] In response, Linvatec argues that it is not bringing a counterclaim against Holko for breach of the covenant of good faith and fair dealing and it has adequately pleaded the rest of these causes of action against Plaintiff Holko. [Def.'s Opp'n. at 9-17.]

///

///

**A.     Breach of Contract**

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).  In order to form a valid and enforceable contract, it is essential that there be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) a sufficient consideration.  Cal. Civ. Code § 1550; see Binder v. Aetna Life Ins. Co., 75 Cal. App. 4th 832, 850 (1999) (noting that a manifestation of mutual assent is required to form a valid contract).

Livantec argues that it has pled the existence of a valid contract, namely the licensing agreement.  [Def.'s Opp'n. at 11.]  While this is true, Linvatec never alleges that Holko consented to the agreement and was a party to the agreement.  Linvatec only alleges that Alvarado and Zimmer executed the licensing agreement and that Zimmer assigned all of its interests under the licensing agreement to Linvatec.  [Am. Countercl. ¶¶ 8-9, 40-41.]  Because Plaintiff does not allege that there was an agreement between itself and Holko, Plaintiff has failed to adequately plead a cause of action for breach of contract against Holko.  See Conder v. Home Sav. of Am., 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010).

Linvatec argues that the "Exclusive Manufacturing Agreement" attached to the licensing agreement shows that Kenneth Holko was a party to the licensing agreement.  [Pl.'s Opp'n. at 11-12.]  The exclusive manufacturing agreement attached to the amended counterclaims states that the agreement is made between Zimmer, Inc. and Kenneth H. Holko Inc.  [Am. Countercl. Ex. 1, at 22.]  Kenneth H. Holko Inc. is not the counterdefendant in this lawsuit; Kenneth Holko, as a individual, is the counterdefendant.  Under California law, a corporation is a distinct legal entity separate from its stockholder and officers.  Merco Constr. Engineers, Inc. v. Municipal Ct., 21 Cal. 3d 724, 729 (1978).  Accordingly, the manufacturing agreement at most shows that Kenneth Holko Inc. was a party to the agreement not Kenneth Holko, the individual.

Linvatec also argues that Plaintiffs are estopped from asserting that Holko is not a party to the licensing agreement because Holko is suing Linvatec for breach of the licensing agreement.

[Pl.'s Opp'n. at 12-13.] In response, Plaintiffs argue that Holko does not have to be a party to the contract to bring a cause of action for breach of contract because Holko is a third-party beneficiary to the contract. [Def.'s Reply. at 5 (citing CAL. CIV. CODE § 1559; Serv. Emps. Int'l Union, Local 99 v. Options, 200 Cal. App. 4th 869, 878 (2011) ("A third party may enforce a contract made for his or her benefit or made for the benefit of a class of which he or she is a member.").] A third-party beneficiary "is not a contracting party." Murphy v. Allstate Ins. Co., 17 Cal.3d 937, 944 (1976). Linvatec does not provide any argument or authority for the proposition that a third-party beneficiary may be sued for breach of contract. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Linvatec's breach of contract counterclaim against Holko.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

In its opposition, Linvatec argues that it is unnecessary to dismiss this counterclaim as to Plaintiff Holko because this counterclaim is only being brought against Alvarado. [Def.'s Opp'n. at 10.] In its amended counterclaims, Linvatec alleges that "Alvarado breached the covenant of good faith and fair dealing implied into any contract that existed between the parties." [Am. Countercl. ¶ 71.] Linvatec does not allege that Holko breached the covenant of good faith and fair dealing. Accordingly, the Court **DENIES** as moot Plaintiffs' motion to dismiss this counterclaim as to Holko.

### C. Unjust Enrichment

Linvatec brings a counterclaim for unjust enrichment. However, "[t]here is no cause of action in California for unjust enrichment." Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003); accord. McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006). Rather, unjust enrichment is "synonymous with restitution." Melchior, 106 Cal. App. 4th at 793. Because unjust enrichment is not a cause of action under California law, Linvatec's counterclaim should be dismissed.

Further, even if unjust enrichment was an independent cause of action, Linvatec's cause of action should still be dismissed. Linvatec argues that this cause of action should not be dismissed because restitution is allowed where a contract is found to be uneforceable or ineffective. [Pl.'s Opp'n. at 14.] However, for a contract to be found uneforceable or ineffective, it must first be

alleged that there was a contract. Here, Linvatec does not allege that there was an agreement between itself and Holko. Accordingly, the Court **DISMISSES WITH PREJUDICE** Linvatec's counterclaim for unjust enrichment as to Holko.

### D.     Accounting

To state a claim for accounting, a plaintiff must allege that (1) a relationship exists between the plaintiff and defendant that requires an accounting; and (2) some balance is due to the plaintiff that can only be ascertained by an accounting. Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (2009).

Linvatec alleges that pursuant to the agreement, it has paid royalties to Holko on a quarterly basis. [Am. Countercl. ¶ 43.] Linvatec further alleges that due to the expiration of two of the four patents covered by the agreement, it has overpaid royalties to Holko. [Id. ¶¶ 50, 90.] Therefore, Linvatec has adequately alleged that a relationship exists between itself and Holko that requires an accounting and Holko owes Linvatec a balance that can only be ascertained by an accounting. Plaintiffs appear to argue that a claim for accounting is a remedy and not an independent cause of action. [Pl.'s Reply at 6.] However, Plaintiffs provide no authority for this contention, and California courts have stated that a cause of action for accounting exists as long as the above requirements have been met. See Teselle, 173 Cal. App. 4th at 179. Accordingly, Linvatec has adequately pleaded a cause of action for accounting against Holko, and the Court declines to dismiss this counterclaim.

### E.     Declaratory Relief

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A declaratory-judgment action satisfies the case-or-controversy requirement if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," and the dispute is "real and substantial" and admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

In its claim for declaratory relief, Linvatec requests that this Court declare whether it was required to pay royalties to Holko pursuant to the licensing agreement on certain products following the expiration of the two patents. [Am. Countercl. ¶ 61.] In support of this claim, Linvatec alleges it has made payments to Holko pursuant to the licensing agreement, but because two of the patents covered by the agreement have expired, Linvatec overpaid those royalties. [Id. ¶¶ 43, 50, 52-60.] These allegations show that there is a "real and substantial" dispute about whether Linvatec has overpaid royalties to Holko. Therefore, Linvatec has satisfied the case-or-controversy requirement for bringing a declaratory judgment action.

Plaintiffs argue that this causes of action should be dismissed because Linvatec does not allege that there is a contractual relationship between itself and Holko. [Pl.'s Reply at 6.] However, to state a claim for declaratory relief, it is not necessary for Linvatec to allege that it had a contractual relationship with Holko. All that is required is for Linvatec to allege that it and Holko have adverse legal interests in a definite and concrete dispute. See MedImmune,, 549 U.S. 118, 127 (2007). Linvatec has sufficiently alleged that it and Holko have adverse legal interests in a definite and concrete dispute over whether Linvantec has overpaid Holko royalties and Holko owes Linvatec money. [Am. Countercl. ¶¶ 43, 50, 52-60.] Indeed, Plaintiffs admit that although Holko might not be a party to the licensing agreement, he has an interest in the contract as a third-party beneficiary because he is entitled to benefits under to the licensing agreement. [Pl.'s Reply at 5.] Accordingly, Linvatec has adequately pleaded a cause of action for declaratory relief against Holko, and the Court declines to dismiss this counterclaim.

**IV.     Linvantec's Negligent Misrepresentation Claim**

Plaintiffs argue that Linvatec's counterclaim for negligent misprepresentation should be dismissed as to both Plaintiffs because it is barred by the economic loss doctrine. [Pl.'s Mot. at 8-9.] In response, Linvatec argues that the economic loss doctrine does not apply to its negligent misrepresentation counterclaim because the claim is based on a different set of facts and damages from Linvatec's breach of contract counterclaim. [Def.'s Opp'n. at 8.]

Under California law, the economic loss doctrine bars tort claims based on the same facts and damages as breach of contract claims. The doctrine "precludes recovery for 'purely economic

1  loss due to disappointed expectations,' unless the plaintiff 'can demonstrate harm above and
2  beyond a broken contractual promise.'" Multifamily Captive Grp., LLC v. Assurance Risk
3  Managers, Inc., 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009) (quoting Robinson Helicopter Co. v.
4  Dana Corp., 34 Cal. 4th 979, 988 (2004)); see also Cnty. of Santa Clara v. Atlantic Richfield Co.,
5  137 Cal. App. 4th 292, 328 (2006) (stating that the economic loss rule applies unless "the plaintiff
6  can establish that the fraud exposed the plaintiff to liability"). The rule seeks to "prevent the law
7  of contract and the law of tort from dissolving one into the other." Robinson Helicopter, 34 Cal.
8  4th at 988 (internal quotation marks omitted). Thus, "conduct amounting to a breach of contract
9  becomes tortious only when it also violates a duty independent of the contract arising from
10 principles of tort law" and "exposes a plaintiff to liability for personal damages independent of the
11 plaintiff's economic loss." Id. at 989, 993 (internal quotation marks omitted).

12     The Court agrees with Linvatec that its negligent misrepresentation counterclaim is based
13 on facts that are separate from its breach of contract counterclaim–specifically, Linvatec's
14 allegations that Plaintiffs' patent attorney informed Linvatec in a November 24, 2008 email that
15 the two patents that expired in 2004 would not expire until February 10, 2009. [Am. Countercl. ¶
16 49.] However, Linvatec alleges that it suffered the exact same damages for both counterclaims,
17 the overpayment of royalties. [Id. ¶¶ 87-88, 106.] Therefore, Linvatec has not alleged that the
18 statements made by Plaintiffs' patent attorney exposed it to liability for personal damages
19 independent of its economic loss caused by the breach of contract. See Robinson Helicopter, 34
20 Cal. 4th at 993. In the absence of allegations that Linvatec suffered some harm above and beyond
21 the harm suffered from the breach of contract, Linvatec's counterclaim for negligent
22 misrepresentation is barred by the economic loss doctrine. See, e.g., Butler-Rupp v. Lourdeaux,
23 134 Cal. App. 4th 1220, 1229 (2005); Legal Additions LLC v. Kowalksi, 2010 U.S. Dist. LEXIS
24 25996, at *12-14 (N.D. Cal. Mar. 19, 2010); Multifamily Captive Grp., 629 F. Supp. 2d at 1146.

25     Linvatec argues that if the Court dismisses its counterclaim for breach of contract as to
26 Holko, then its claim for negligent misrepresentation against Holko would not be barred by the
27 economic loss doctrine. [Def.'s Opp'n. at 9.] The Court agrees. If there is no breach of contract
28 counterclaim against Holko that could preclude Linvatec's negligent misrepresentation

counterclaim, then the economic loss doctrine does not apply. See, e.g., Interworld Network Int'l, Inc. v. VWR Int'l, Inc., 2012 U.S. Dist. LEXIS 2849, at *14-15 (N.D. Cal. Jan. 10, 2012) (declining to apply the economic loss doctrine where the defendant failed to point to any alleged broken contractual promises between it and the plaintiff).  In response, Plaintiffs argue that Holko is not a party to the contract, but is a third-party beneficiary.  [Pl.'s Reply at 4.]  However, Plaintiffs provide no authority showing that the economic loss doctrine should apply to tort claims against third-party beneficiaries.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Linvatec's counterclaim for negligent misrepresentation as to Alvarado, but declines to dismiss the counterclaim as to Holko.

## CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion to dismiss Linvatec's first amended counterclaims.  Specifically, the Court:

1. **DISMISSES WITH PREJUDICE** Linvatec's counterclaim for unjust enrichment as to Plaintiff Holko;

2. **DISMISSES WITHOUT PREJUDICE** Linvatec's counterclaim for breach of contract as to Plaintiff Holko;

3. **DISMISSES WITHOUT PREJUDICE** Linvatec's counterclaim for negligent misrepresentation as to Plaintiff Alvarado; and

4. **DENIES** as moot Plaintiffs' motion to dismiss Linvatec's counterclaim for breach of covenant of good faith and fair dealing as to Plaintiff Holko because Linvatec does not assert this counterclaim against Plaintiff Holko.

The Court declines to dismiss Linvatec's counterclaims for accounting, declaratory judgment, and negligent misrepresentation as to Plaintiff Holko.  Defendants may amend their counterclaims within (21) calendar days from the date of this Order.

**IT IS SO ORDERED.**

**DATED:**  February 8, 2012

*Irma E. Gonzalez*

**IRMA E. GONZALEZ**
**United States District Judge**